205 N.J. Super. 6 (1985)
500 A.2d 3
VIOLETTA GENOE, PLAINTIFF-RESPONDENT,
v.
GORDON A. GENOE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 17, 1985.
Decided October 11, 1985.
*7 Before Judges DEIGHAN and STERN.
Gordon A. Genoe, appellant pro se.
*8 Skoloff & Wolfe, attorneys for respondent (Stephen P. Haller, on the letter brief).
The opinion of the court was delivered by STERN, J.S.C. (temporarily assigned)
This is an appeal from an order of the Chancery Division, Family Part, entered on February 25, 1985, (1) reinstating plaintiff's complaint seeking a modification of a custody order entered in the courts of Florida; (2) directing that "all issues relating to the health and welfare of the infant children of this marriage will now be heard by the Superior Court of New Jersey, Chancery Division, Family Part"; and (3) placing the matter on the active trial list. The determination by the Family Part that it had jurisdiction to proceed was not a final order and was not appealable as of right. The proceedings should have been conducted expeditiously. However, the parties briefed the appeal as if from a "final" order and the issue under review relates to jurisdiction. We grant leave to appeal nunc pro tunc to settle the subject of jurisdiction. R. 2:4-4(b)(2).
The parties were married and lived in Florida. They were divorced by judgment entered in that state on August 15, 1977. Plaintiff was awarded custody of the two minor children of the marriage, and defendant was granted "liberal visitation". Defendant was ordered to make support payments. Each party was "restrained from permanently removing any of the children from the jurisdiction of the Court without the permission of the other parent or of the Court."
Subsequently, the children moved with their mother to New Jersey. Defendant challenged the move in Florida and sought additional visitation. The Florida court conducted a hearing and concluded that "[t]he father's visitation was curtailed and because of the move to New Jersey by the mother with the minor children, the father's visitation has been totally cut off." The court also concluded that "in spite of the father's serious illness he is entitled and indeed must have established for *9 himself and the well-being of his minor children, David and Dara, visitation privileges." Accordingly, by order entered on September 27, 1983, the Florida court directed, among other things, that the defendant be allowed visitation at certain designated times, including holidays, one month during the summer and whenever able to visit the children upon giving reasonable notice. Specifically, the court ordered that "the father shall be entitled to summer visitation from July 1 to 31st 1984." The September 27, 1983 order also included the following paragraphs:
This Court retains jurisdiction for the purposes of enforcing the provisions of this order allowing the father visitation privileges. There is no proof that any State but Florida is the homestate of the minor children.
Finally, this Court is aware that the mother is seeking the transfer of this case to the New Jersey Courts on the basis of her move to New Jersey. This court does not comment on that matter. It assumes that under the Uniform Child Jurisdiction Custody Act, that if the mother pursues a transfer to the New Jersey Courts, the New Jersey Courts will abide by the act, this Court's Orders and the Laws of the State of Florida, and will contact this Court.
After entry of the September 27, 1983 order, plaintiff moved in Florida for a modification and limitations of its provisions. On July 23, 1984, plaintiff's motion was denied except that the dates for summer visitation in 1984 were amended, with visitation to occur during the month of July in subsequent years unless modified by written agreement. The order of July 23, 1984 further provided that "Visitation shall otherwise be as stated in the Court Order of September 27, 1983."
On November 3, 1983 plaintiff filed a complaint in the Chancery Division, Bergen County, seeking modification of the Florida order of September 27, 1983. That complaint alleged jurisdiction by virtue of N.J.S.A. 2A:34-31(a)(1)-(3), asserting that New Jersey is the home state of the minor children; that the children have been residents of New Jersey for more than six months and that the "best interests of the children" requires that visitation be decided here because:
1. The plaintiff and the children have a significant connection to this state;

*10 2. There is available in New Jersey substantial evidence concerning the present and future care, protection, welfare and personal relationships of the children;
3. The children are physically present in New Jersey and it is necessary to protect them, on an emergent basis, from the operation and effect of an order of the Fifteenth Judicial Circuit Court of Palm Beach, Florida, and from the defendant herein.
The complaint also indicated that plaintiff and the children had lived in Fort Lee, Bergen County, New Jersey for two years after having left Florida. Plaintiff further alleged that defendant suffered from a chronic mental illness which posed a "threat ... to the safety of the children ..." and "... that defendant will seek to disappear with the children, if given that opportunity, or perhaps do them and himself mortal injury." The complaint, accompanied by a certification, also asserted that "there should be no visitation whatever until a single, independent court-appointed psychiatrist advised otherwise" and that any "[v]isitation thereafter should be at plaintiff's home and supervised." In essence, plaintiff asked the Chancery Division to exercise jurisdiction pursuant to N.J.S.A. 2A:34-28 et seq., to enter "such order or orders as to visitation with the children by defendant as are just and proper in the childrens' best interest," and to "modify the Florida Court's order of September 27, 1983 to eliminate all visitation by defendant outside plaintiff's presence and as is in the childrens' best interests."
On January 13, 1984, the Chancery Division (as of then the Family Part) rendered an opinion indicating that the judge spoke with his counterpart in Florida and further stating:
... it appears that the plaintiff mother seeks to use the New Jersey courts as an appellate vehicle to seek relief from the orders of the Florida court. Judge Wessel [of Florida] and I are in agreement that the standard criteria for the acceptance of jurisdiction in a custody/modification matter does not exist in the instant case. Mrs. Genoe has voluntarily participated in the Florida proceeding and she may not now move from court to court seeking results she finds more desireable.
Accordingly, the judge dismissed the complaint, citing E.E.B. v. D.A., 89 N.J. 595 (1982) and Bowden v. Bowden, 182 N.J. Super. 307 (App.Div. 1982).
*11 A confirming order was entered on February 6, 1984.
As noted, the litigation in Florida continued. Ultimately, defendant moved there for a change of custody, and plaintiff moved to dismiss the motion. After a hearing, the court entered an opinion and order on October 12, 1984 which stated, in part, as follows:
Following the decree ordering that Mrs. Genoe be awarded permanent custody of the two minor children of the parties, Mrs. Genoe, without consent of the Court, removed the children to the State of New Jersey. There followed a Court hearing sometime later, resulting in the Court allowing Mrs. Genoe to continue to reside in the State of New Jersey with the minor children. Mrs. Genoe and the children have resided in New Jersey since approximately 1982. Dr. Genoe has not left the State of Florida....
The Former Husband has now filed a Motion for Change of Custody of Minor Children/Motion For Change to Joint Custody/Motion to Compel Return of Children to Florida....
The Former Wife asserts that pursuant to § 61.1308 Florida Statutes, the Court lacks jurisdiction to rule upon the motion for change of custody and pursuant to § 61.1316 Florida Statutes, even if the Court does have jurisdiction, it should decline to exercise it in that the State of New Jersey is the more appropriate forum to rule upon the custody question.
The parties have each submitted numerous cases to the Court in support of their respective positions and having considered all of these matters, the Court finds that the question of custody should be resolved in the State of New Jersey because this Court either lacks jurisdiction or the forum is not convenient.
The Florida court considered cases decided in that state under sections of the Uniform Child Custody Jurisdiction Act equivalent to N.J.S.A. 2A:34-31 (jurisdiction) and N.J.S.A. 2A:34-35 (finding of inconvenient forum). The Florida court concluded that New Jersey was "the home state of the children" (and had been "within the six months before the commencement of the proceeding to modify the custody decree"), see N.J.S.A. 2A:34-30(e); 2A:34-31(a)(1), "and that the former husband has failed to demonstrate to the Court that it is in the best interest of the minor children" that the Florida court assume jurisdiction. The court concluded:
... the Court finds that it lacks jurisdiction over this cause. Further, the Court finds that even if it has jurisdiction, it should decline to exercise such jurisdiction pursuant to § 61.1316, Florida Statutes, in that New Jersey is the home state of the children, New Jersey has closer connections with the children and Mrs. Genoe and substantial evidence concerning the children's present and *12 future care, protection, training, and personal relationships is more readily available in New Jersey than in the State of Florida.
After entry of the October 12, 1984 order in Florida, plaintiff moved before the Family Part for an order reinstating the New Jersey complaint and "for an order directing that all future and further applications by plaintiff or defendant in the above matter relating in any way, shape or form to the children, be made in the Superior Court of New Jersey, Chancery Division, Family Part, for so long as the State of New Jersey remains the home state of said children." On February 25, 1985, the Family Part concluded that it had "jurisdiction over the children who had been residents of this state for several years" and that "[t]he removal of the children from the State of Florida to the State of New Jersey was authorized by order of the Florida court dated January 18, 1982." Based on those findings and the fact that Florida had declined jurisdiction, the Family Part entered its order of February 25, 1985 reinstating the complaint. That order is the subject of this appeal.

I
We first deal with defendant's contention that New Jersey has no in personam jurisdiction. Defendant relies upon Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) in which the Supreme Court held that California had no in personam jurisdiction to require a New York resident to pay support for his daughter who lived with the mother in California. Kulko, of course, did not involve an issue of custody; it concerned only in personam jurisdiction for the purposes of entering a support decree.
Jurisdiction in this case is based on the fact that the children live in this state and have lived here by lawful order of the courts of Florida. The action filed in the Chancery Division, while seeking counsel fees, costs and "such other relief as may be deemed proper" essentially requests modification of a custody award. It does not seek modification of a support order. *13 We, therefore, conclude that New Jersey has jurisdiction to enter an order modifying custody or visitation, provided that there is a sufficient statutory basis for doing so, without entering any order amending the Florida support order or otherwise directing defendant to pay costs, fees or support, for which in personam jurisdiction or "minimum contacts" sufficient to satisfy due process, see e.g., International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), would be required. See Shaffer v. Heitner, 433 U.S. 186, 208, 97 S.Ct. 2569, 2581, 53 L.Ed.2d 683 (1977) (ftn. 30) McAtee v. McAtee, 323 S.E.2d 611, 616-618 (W. Va. 1984); In re Marriage of Schuham, 120 Ill. App.3d 339, 76 Ill.Dec. 159, 163-64, 458 N.E.2d 559, 563-564 (1983); In re Marriage of Hudson, 434 N.E.2d 107, 117-119 (Ind. App. 1982), cert. den. 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433 (1983); In re Marriage of Leonard, 122 Cal. App.3d 443, 449-457, 175 Cal. Rptr. 903 (Ct.App. 1981); contra, Pasqualone v. Pasqualone, 63 Ohio St. 2d 96, 406 N.E.2d 1121 (Sup.Ct. 1980). See also E.E.B. v. D.A., 89 N.J. 595 (1982), cert. den. 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983), reh'g den. 460 U.S. 1104, 103 S.Ct. 1806, 76 L.Ed.2d 369 (1983) in which our Supreme Court held that a "best interest hearing" could be conducted in this state where the child and adoptive parents resided, although the natural mother apparently had never been in this state; Marcrum v. Marcrum, 181 N.J. Super. 361 (App.Div. 1981), certif. granted and remanded for "best interests hearing", 89 N.J. 402 (1982), app. dism. 93 N.J. 232 (1982) where the defendant apparently had no contacts with New Jersey.[1]
*14 As stated in Schuham, supra, 76 Ill.Dec. at 163, 458 N.E.2d at 563, with respect to the Uniform Child Custody Jurisdiction Act (UCCJA) adopted in Illinois:
Fulfillment of the purposes and policies of the UCCJA invoked in this case does not require personal jurisdiction for the application of its provisions (Pratt v. Pratt (R.I. 1981), 431 A.2d 405, 409; In re Marriage of Hudson (Ind. App. 1982), 434 N.E.2d 107, 119 cert. denied (1983), 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433; In re Marriage of Leonard (1981), 122 Cal. App.3d 443, 459, 175 Cal. Rptr. 903; Commissioners' Note, UCCJA § 12, 9 Uniform Laws Annotated 150 (1979)), because its subject matter, the `custody determination,' expressly `does not include a decision relating to child support or any other monetary obligation of any person.' (Ill. Rev. Stat. 1981, ch. 40, par. 2103.02.) The UCCJA thus has been found applicable for modifying custody and visitation orders (e.g. In re Custody of Bechard (1978), 40 Colo. App. 516, 577 P.2d 778; Bahr v. Galonski, (1977), 80 Wis.2d 72, 257 N.W.2d 869), but, as in the instant case, not applicable to modify support orders pursuant to its provisions (e.g., Kioukis v. Kioukis (1981), 185 Conn. 249, 440 A.2d 894, 896; Rodgers v. Rodgers (Wyo. 1981), 627 P.2d 1381).
The custody status of a child or children may be decided quasi in rem (In re Marriage of Hudson, 434 N.E.2d at 118; Friedman and Marcus, The Continuing Jurisdiction Dilemma in Interstate Child Custody Disputes, 70 Ill.B.J. 304, 305 (1982)), and once that jurisdiction is assumed pursuant to the UCCJA, *15 custody and visitation orders can be made and modified without regard to whether either parent has submitted to the court's jurisdiction.
Accordingly, we hold that in personam jurisdiction is not required to entertain an application to modify an order for custody or visitation under the UCCJA provided that notice and opportunity to be heard are given as required by N.J.S.A. 2A:34-32 and -33.[2]See R. 4:4-4; 4:4-5.

II
We now turn to the statutory basis for the assertion of jurisdiction. This requires analysis of the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 et. seq. (UCCJA). That Act seeks "to protect the welfare of children in interstate custody disputes by introducing certainty and stability in the choice of forum and by encouraging interstate cooperation in the interest of the child." E.E.B. v. D.A., 89 N.J. 595, 603 (1982). As Justice Pollock pointed out, the National Conference of Commissioners on Uniform State Laws proposed the Uniform Act
in response to the `public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states.' Commissioners' Prefatory Note to UCCJA, 9 U.L.A. at 111. To avoid jurisdictional conflicts and the accompanying trauma they inflict on the parties, especially the children, UCCJA urges that one state, albeit with help from others, should determine the issue of custody. UCCJA § 1, N.J.S.A. 2A:34-29. [Id. at 607.]
*16 The UCCJA rejects a rigid rule vesting jurisdiction automatically in the home state and favors, instead, "a more flexible approach." Id. at 610. As Justice Pollock further stated, at page 611:
A custody dispute is more than a jurisdictional chess game in which winning depends on compliance with predetermined rules of play. A child is not a pawn. In exercising its discretion within the confines of UCCJA ... a court should consider not only the literal wording of the statutes but their purpose: to define and stablize the right to custody in the best interest of the child.
[The Parental Kidnapping Prevention Act of 1980, 28 U.S.C.A. § 1738A] and UCCJA also share a common goal of limiting the ability of sister-states to modify custody decrees. Both statutes permit modification only if the forum has jurisdiction and the rendering state has lost jurisdiction or has declined to exercise it.
This is precisely what occurred in this case. Based on the record, including the opinions of the State of Florida, see Evid.R. 9, the Family Part properly concluded that it had jurisdiction because New Jersey is the "home state" of the children, N.J.S.A. 2A:34-31(a)(1), and because Florida had declined to exercise jurisdiction on the ground that New Jersey was the more appropriate forum, see N.J.S.A. 2A:34-31(a)(4)(i). As a result, the Family Part had jurisdiction to modify a custody decree entered in another state because (1) the Florida court had "declined to assume jurisdiction to modify the decree," and (2) the courts of this State had statutory jurisdiction. N.J.S.A. 2A:34-42. Unlike Neger v. Neger, 93 N.J. 15 (1983), here the plaintiff sufficiently proved that Florida "had declined to assume jurisdiction to modify the decree" and that the Superior Court of New Jersey had jurisdiction under the criteria of the UCCJA. See Neger v. Neger, supra at 31. As Justice Schreiber indicated in Neger, there is a difference between exercise of jurisdiction in the absence of a custody decree or ongoing proceedings in another state and the exercise of jurisdiction to modify a decree of another jurisdiction. Not all the statutory criteria and policy considerations are the same. Neger, supra at 27-29.
Although more than one state may potentially have initial jurisdiction, the litigation invoking original jurisdiction should ordinarily commence in the state *17 with which the child and his family have the closest connection and where significant evidence concerning the welfare of the child is more readily available. N.J.S.A. 2A:34-34. The UCCJA admonishes the courts to `decline the exercise of [initial] jurisdiction when the child and his family have a closer connection with another state' N.J.S.A. 2A:34-29(c). The point is that the initial jurisdictional provisions do not come into play when there is a prior custody decree in another state that continues to have jurisdiction.
Two provisions of the statute establish the guidelines concerning the deference to be accorded custody decrees of another state, N.J.S.A. 2A:34-41 and -42. These are the key provisions that inhibit child snatching and "guarantee a great measure of security and stability of environment to the `interstate child' by discouraging relitigations in other states." [Neger v. Neger, supra at 28-29].
N.J.S.A. 2A:34-41 requires recognition of out-of-state custody decrees entered in accordance with statutes similar to ours "so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act." N.J.S.A. 2A:34-42, however, permits modification of a custody decree of another state where this state has jurisdiction, and the other state either no longer has jurisdiction or has declined to assume it. In this case, the prerequisites of both N.J.S.A. 2A:34-31 and N.J.S.A. 2A:34-42 have been met. There is statutory jurisdiction in New Jersey, and, rightfully or wrongfully, Florida has declined to exercise continuing jurisdiction.[3]See and compare e.g., L.F. v. G.W.F., 183 N.J. Super. 195 (App.Div. 1982); Kumar v. Superior Court, 32 Cal.3d 689, 186 Cal. Rptr. 772, 652 P.2d 1003 (1982); Quenzer v. Quenzer, 653 P.2d 295 (Wyo. 1982), cert. den. 460 U.S. 1041, 103 S.Ct. 1436, 75 L.Ed.2d 794 (1983); Re Marriage of Cotter, 64 Or. App. 173, 666 P.2d 1382 (1983); In re Marriage of Ratshin, 144 Cal. App.3d 974, 192 Cal. Rptr. 891 (Ct.App. 1983); Clark v. Kendrick, 670 P.2d 32 (Colo. App. 1983); Funk v. Macaulay, 457 N.E.2d 223 (Ind. App. 1983); see generally Annot., "Validity, *18 Construction and Application of Uniform Child Custody Jurisdiction Act," 96 A.L.R.3d 968 (1979 and 1985 supp). New Jersey may now conduct a hearing and enter orders relating to custody and visitation. See N.J.S.A. 2A:34-30(b) (definition of "custody" includes "visitation"); L.F. v. G.W.F., 183 N.J. Super. supra at 201; In re Marriage of Schuham, 76 Ill.Dec. at 163, 458 N.E.2d supra at 563. We assume that the court will, of course, give appropriate statutory deference to the prior proceedings and orders of the Florida courts. See N.J.S.A. 2A:34-42(b).
The order reinstating the complaint is affirmed, and the matter is remanded to the Family Part for a plenary "best interests" hearing. See Fusco v. Fusco, 186 N.J. Super. 321, 327-329 (App.Div. 1982). The hearing shall be conducted on a priority basis.[4]R. 1:2-5(1). We do not retain jurisdiction.
NOTES
[1] The issue of in personam jurisdiction was apparently not raised or considered in E.E.B. v. D.A., supra, or Marcrum v. Marcrum, supra. For a detailed analysis regarding the reasons Kulko, supra, and May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) do not require in personam jurisdiction in these circumstances, see McAtee v. McAtee, supra at 616-618; In re Marriage of Leonard, supra, 122 Cal. App.3d at 449-457, 175 Cal. Rptr. 903; In re Marriage of Hudson, supra at 117-119. As stated in McAtee, supra at 617:

The basis for most decisions upholding the jurisdictional provisions of the UCCJA is found in the Supreme Court's decision in Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In that case the Court abolished the distinctions formerly recognized between actions in rem and actions in personam, and held that the minimum contact standard of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) applies to both. `[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in International Shoe and its progeny.' 433 U.S. at 212, 97 S.Ct. at 2584.
The Court in Shaffer, however, recognized that although the single standard of International Shoe `could be easily applied in the vast majority of cases,' it could not accommodate all necessary litigation. Thus, the Court carved out certain exceptions from the new rule. The Court wrote: `We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudication of status, are inconsistent with the standard of fairness.' Shaffer v. Heitner, supra, n. 30. 433 U.S. at 208, 97 S.Ct. at 2582 n. 30.
Footnote 30 of Shaffer has been interpreted as recognizing adjudications of status as an exception to the `minimum contacts' requirement. Hudson v. Hudson, supra [35 Wash. App. 822, 670 P.2d 287 (1983)]; Bodenheimer & Neeley-Kvarme, supra; Restatement (Second) of Conflict of Laws §§ 69-71 (1971). (footnotes omitted)
[2] N.J.S.A. 2A:34-31(a) relates to "jurisdiction to make a child custody determination by initial or modification decree," and N.J.S.A. 2A:34-42 relates to modification of a "custody decree" entered in another state. A "`Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights, and does not include a decision relating to child support or any other monetary obligation of any person." N.J.S.A. 2A:34-30(b) (emphasis added). A "`Decree' or `custody decree' means a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." N.J.S.A. 2A:34-30(d). "Custody proceeding" is defined in N.J.S.A. 2A:34-30(c).
[3] Appellant's brief indicates that an appeal was pursued in Florida. We have not been advised of any disposition. The trial court should, of course, consider the impact of the result. See N.J.S.A. 2A:34-34. However, no one suggests that issues regarding custody or, as here, visitation should be delayed pending appeal in the foreign jurisdiction where the appeal is from a determination declining jurisdiction. See N.J.S.A. 2A:34-34. See also R. 1:2-5(1); R. 5:8-6.
[4] Apparently the trial court treated the appeal as interlocutory and an application to stay further proceedings in the Family Part was denied by this Court on June 28, 1985. However, no motion was made for remand, dismissal or summary disposition before any further proceedings were conducted.