215 N.J. Super. 132 (1986)
521 A.2d 381
MC, PLAINTIFF,
v.
MC, DEFENDANT.
Superior Court of New Jersey, Chancery Division Ocean County.
Decided September 30, 1986.
*133 Jon Steiger for plaintiff (Falvo, Bonello, Moriarty & Steiger, attorneys)
Mc, defendant, pro se
Peter Van Dyke, Court appointed, for defendant (Gelzer, Kelaher, Shea, Novy & Carr, attorneys)
R. Garry Mundy, Court appointed, Guardian Ad Litem for B. & M.
(R. Garry Mundy, attorney)

*134 OPINION
ROSALIE B. COOPER, J.S.C.
This matter originally came before the Court on a default application by the mother for custody of two children. One child, B., presently lives in Ireland with his father and his father's parents; the other child, M., resides with her mother and her mother's parents in New Jersey. (Initials, rather than full names, are being used to protect the interests of all parties.)
After hearing plaintiff's testimony the Court adjourned the matter for approximately one month to permit further testimony and to allow for the appearance of defendant. Although the father appeared and presented his position pro se at the adjourned hearing date, the Court appointed counsel remained at his side for two days and was available to assist him. In addition, the Court appointed a guardian ad litem who participated in the hearing and represented the interests of both children.
The undisputed facts as elicited from the testimony of both father, an Irish national, and mother, a United States citizen, indicated that the couple met and thereafter married in Ireland in 1979. There were two children born of the marriage: B., presently 5 1/2 years of age and M., presently 2 1/2 years of age. By virtue of their parent's status, each child holds dual citizenship in Ireland and the United States. 8 U.S.C.A. § 1401(e).
During the course of the marriage the parties customarily came to New Jersey to summer with the mother's parents. In 1985 the mother returned to New Jersey in May; the father, after completing his duties as a school teacher, followed in June.
Both parties testified to numerous marital arguments, which escalated through the summer of 1985, resulting in a Domestic Violence Order being issued at the behest of the mother. The Order was dismissed approximately one week after issue. The *135 marital disharmony of the summer culminated in the father returning to Ireland in September with the then 4 1/2 year old B., leaving the mother and M. in New Jersey. The father testified that the mother and M. were to follow shortly. The mother denied this.
Plaintiff claimed that as a result of the father's chronic alcohol problem, she was a victim of the "battered wife syndrome". She offered no expert testimony supporting this position. Although the father admitted to one punching incident, he denied that any alcohol problem existed. At the Court's request, defendant submitted to an alcohol evaluation by an expert who, noting the difference in the Irish and American mores concerning alcohol intake, was unable to come to any definitive conclusion.
The mother's undisputed testimony demonstrated that she has sufficient means and facilities to support herself and her two children in New Jersey.
A child psychologist testified on behalf of plaintiff to the close bonding between the mother and daughter and advised of the extremely adverse psychological effects of granting custody of M. to defendant. The expert suggested that the child reestablish contact with the father on a gradual basis. Although the psychologist had not had the opportunity to interview B., she recommended similar interaction between B. and the mother. In an effort to reestablish a relationship prior to the father's return to Ireland, the Court ordered two supervised visits between the father and M. These visits were effectuated with the cooperation of the mother and reportedly went well.
The father stated his position clearly and unequivocably: both children should be with him in Ireland, and he would permit the mother to visit the children there. In support of his position, the father submitted letters of good character which the Court accepted for their limited value.
Among these letters was one from the children's grandfather, with whom B. and defendant now reside. The next to the *136 last paragraph of the grandfather's letter reflects an attitude that the Court finds extremely disturbing:
Finally, B. is growing up a handsome, happy and popular young boy. We had several inquiries re his well-being from the Americal (sic) Embassy. But how could one reply to such hypocricy (sic), when a mother leaver (sic) her darling boy when others have to give him the love which his mother had deprived him of.
This Court is extremely concerned about the psychological impact that the enunciated and obvious prejudiced perception may impart to the impressionable B. during his formative years.
Through this Court's intervention, the parties agreed to a schedule of regular telephone communications between each parent and the absent child. See Consent Order (Exhibit A). A letter from the mother dated September 11, 1986 indicates that initial attempts at establishing these communications per the Consent Order have thus far been unsuccessful. Each party also agreed to notify the other regarding changes of telephone numbers, addresses or unavailability for the scheduled telephone calls and further to exchange the children's school and serious medical problem records.
In addition, defendant agreed that a person in Ireland would be permitted to visit B. and report to plaintiff on a monthly basis concerning her son's physical progress and well-being. The mother agreed to allow similar access to the daughter for the same purpose.
With respect to this matter, the Irish Court held some proceedings commencing in November 1985 when the father applied ex parte (permitting the mother four days to appear to contest) for custody of both children. His affidavit in support of the application accompanying the notice contained a litany of marital problems, but failed to reveal any facts dealing with the "best interest of the child." This notice, although not served upon the wife until January 21, 1986, was the basis for the Irish Custody Order of November 1985 awarding custody of both children to the father.
*137 In March 1986 a further hearing was scheduled in Ireland. Prior to that hearing, the mother was noticed and retained Irish counsel, whose request for an adjournment to permit the mother's attendance at the hearing was denied. No transcripts being available, this Court on September 2, 1986 spoke to Judge Smith, the presiding Irish Judge, who recollected that he had only heard from the father on the day of the hearing. The father had essentially confirmed the affidavit statements. No expert testimony concerning "the best interest of the child" was presented. Judge Smith indicated that had such been offered, it would have been considered. Judge Smith ordered custody of both children to be with the father and assessed costs of the suit against the mother. The Judge indicated that he would consider staying his Order with regard to M. This action would permit plaintiff to appear in Ireland to appeal his decision without the threat of her being held in contempt.
In June 1986 the mother filed a complaint in New Jersey, the subject of the default hearing, seeking custody of both children. It should be noted that when the father called this Court approximately five days before the hearing indicating he would be present, this Court strongly urged him to appear with counsel.
The father submitted to the personal jurisdiction of this Court. He refused to submit or waive jurisdiction with respect to the children.
The first issue which must be addressed pertains to the authority of the Courts of the State of New Jersey to entertain an application for custody of the child or children. In the context of the unique facts before this Court, it is necessary to treat each child individually.
Two legal principles, "comity" as defined in New Jersey, and the application of the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 et seq., must coalesce in the determination of this case.
*138 In Fantony v. Fantony, 21 N.J. 525, 533 (1956), the Supreme Court defined comity and its application:
Comity, in a legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. (Citing cases.)
The recognition of a judgment of a foreign court under the principle of comity is subject generally to two conditions: (1) that the foreign court had jurisdiction of the subject matter; (2) that the foreign judgment will not offend the public policy of our own State. (Citing cases.)
The principles of comity as developed in the case law are paralleled by the Uniform Child Custody Jurisdiction Act:
The general policies of this act extend to the international area. The provisions of this act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature and to custody rendered by appropriate authorities of other nations, if reasonable notice and opportunity to be heard were given to all affected persons. N.J.S.A. 2A:34-51.
Prior to a proper application of the principles of comity, it is clear from N.J.S.A. 2A:34-41 that the jurisdictional provisions of the Uniform Child Custody Jurisdiction Act must be considered. N.J.S.A. 2A:34-41 states:
The courts of this State shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act or which was made under factual circumstances meeting the jurisdictional standards of this act, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act.
The pertinent jurisdictional provisions of the act note:
a. The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is *139 available in this State substantial evidence concerning the child's present or future case, protection, training, and personal relationships; N.J.S.A. 2A:34-31.
"Home state" is defined as:
* * * the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6 month or other period. N.J.S.A. 2A:34-30(e).
The uncontroverted and long standing acceptance of the application of the "best interest of the child" doctrine forms the basis of each and every custody decision in New Jersey. See Brotman v. Brotman, 137 N.J. Eq. 514 (E. & A. 1946); Wilke v. Culp, 196 N.J. Super. 487 (App.Div. 1984), certif. den., 99 N.J. 243 (1985); Fiore v. Fiore, 49 N.J. Super. 219 (App.Div. 1958), certif. den., 28 N.J. 59 (1958); S. v. H.M., 111 N.J. Super. 553 (App.Div. 1970); DiBiano v. DiBiano, 105 N.J. Super. 415 (App. Div. 1969).
With respect to the Irish hearing of November 1985, this Court finds that Order null and void for two reasons. First, the lack of notice as ordered by that Court not only violates that Court's order, but is also contrary to the ennuciated policy of N.J.S.A. 2A:34-51. In addition, by failing to consider the "best interest" doctrine in contravention of New Jersey public policy, the parameters for recognition of a foreign judgment have not been met. Fantony v. Fantony, supra.
The Court finds that prior to the second Irish hearing in March 1986, the mother had been noticed and entered an appearance through counsel to request an adjournment. At that time B. was in Ireland and had remained there subsequent to his return in September 1985. During that hearing Judge Smith would have considered expert testimony concerning the "best interest of the child" if it had been proffered. Accordingly, this Court finds that jurisdiction of the Irish Court is hereby acknowledged and upheld according to the principles of comity and the parameters established in the Uniform Child Custody Jurisdiction Act. The Order of that Court until stayed, appealed *140 or otherwise considered is therefore legal and binding as to B.
Regarding M., who remained with her mother in New Jersey and who has lived here for approximately one-half of her life, this Court finds that New Jersey has jurisdiction and accordingly will exercise same. As of March 1986, New Jersey was the "home state" of M. as defined in N.J.S.A. 2A:34-31.
A plenary hearing is virtually a necessity in every custody case unless there are overwhelming admitted facts (e.g., child abuse). Such a hearing must be held, especially in situations such as the one at bar, where serious and long standing effects on the life and well-being of the child may result. See the case of Stern v. Stern, 196 N.J. Super. 540 (App.Div. 1984), where a plenary hearing was required prior to entry of an order regarding child custody and disbursement of trust assets. In accord is Genoe v. Genoe, 205 N.J. Super. 6 (App.Div. 1985), where it was held that New Jersey, as home state, had jurisdiction to modify a Florida custody decree but only following a "plenary `best interests' hearing". Id. at 18.
Further, absent a prior valid court order to the contrary, both father and mother have equal rights to custody dependent on the best interests doctrine. N.J.S.A. 9:2-4. (Note # 8 and cases cited therein). In supporting this policy, New Jersey espouses joint custody in appropriate cases. Beck v. Beck 86 N.J. 480 (1981). In attempting to frame a joint custody order the Supreme Court has recognized that "[t]he most troublesome aspect of joint custody decree is the additional requirement that the parents exhibit a potential for cooperation in matters of child rearing." Id. at 498.
Unfortunately, for all parties concerned, since cooperation between the parents is virtually nonexistent, such an order would be inappropriate in this case.
The Court carefully considered the evidence presented by the expert who testified to her observation of the filial bonding *141 between the mother and M. Sorentino v. Family & Children's Society of Elizabeth, 72 N.J. 127 (1976). Filial bonding is an essential ingredient in the psychological and emotional development of a child. MHB v. HTB, 100 N.J. 567 (1985). Also considered was the psychologist's testimony regarding the detrimental effects on M. were custody to be given to defendant prior to his reestablishing the parental relationship that had been severed at the close of summer 1985.
It is for these reasons that the Court orders custody of M. be awarded to the mother, subject to reasonable visitation rights with the father.
It is further ordered that the father be permitted to reestablish the relationship with his daughter as can best be done under the circumstances, until such time as liberal visitation, without detriment to the child, can be effectuated.
Recognizing the lack of parental cooperation and accepting the jurisdictional limitations of this Court, and the fact that the father subjected himself to personal jurisdiction, it is hereby ordered that the mother, father and M. (if appropriate) attend family counseling sessions not less than once a month for the forthcoming year.
The most propicious Order for all concerned, and which this Court feels would be in the best interest of both children, is one that would be entered and enforceable both in the Courts of the State of New Jersey and Ireland similar to that suggested in Levicky v. Levicky, 49 N.J. Super. 562 (Ch.Div. 1958). There, the court, in awarding custody to the father in New Jersey, refused to recognize a custody consent agreement until the French Court modified its Order to include the terms of the consent agreement.
Counsel for plaintiff to submit an Order encompassing the decision of this Court.