**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0577-16T1

M.J.L.G.,

    Plaintiff-Appellant,

v.

G.R.,

    Defendant-Respondent.

_____

IN THE MATTER OF O.N.R.L.,

    Minor.

_____

        Submitted November 8, 2017 — Decided November 27, 2017

        Before Judges Carroll and Leone.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Morris County,
        Docket No. FD-14-0554-16.

        Rutgers Child Advocacy Clinic and Kids in Need
        of Defense, attorneys for appellant (Randi
        Mandelbaum and Gilda Holguin, on the brief).

        Respondent has not filed a brief.

PER CURIAM

    Plaintiff M.J.L.G. appeals a portion of the Family Part's

July 28, 2016 order in this matter involving a minor from Honduras

who now resides with plaintiff in New Jersey, and a September 15, 2016 order denying plaintiff's motion for reconsideration. In particular, plaintiff argues that the court erroneously failed to find that her son's reunification with his biological father was not viable due to abandonment and neglect, pursuant to the federal criteria for special immigrant juvenile (SIJ) status set forth in 8 U.S.C.A. § 1101(a)(27)(J) and 8 C.F.R. § 204.11(c). The court ruled it could not make this finding because it lacked personal jurisdiction over the father. For the reasons that follow, we reverse the court's determination that it lacked jurisdiction to decide this discrete issue, and remand this matter to the trial court to make the required finding.

The legal context of this non-contested case is governed by the aforesaid federal provisions concerning SIJ status. Those provisions were recently explained in depth in H.S.P. v. J.K., 223 N.J. 196, 208-11 (2015). As H.S.P. notes, Congress amended the Immigration Act of 1990 by adopting the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), Pub. L. No. 110-457, 122 Stat. 5044. The TVPRA allows an undocumented juvenile who is present in the United States to receive SIJ status if

> (i) [he] has been declared dependent on a juvenile court located in the United States or . . . such a court has legally . . . placed [him] under the custody of, an agency or department of a State, or an individual or

entity appointed by a State or juvenile court located in the United States, and [his] reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) [a juvenile court determined] it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) . . . the Secretary of Homeland Security consents to the grant of special immigrant juvenile status[.]

[8 U.S.C.A. § 1101(a)(27)(J).]

The Immigration Act's implementing regulations further clarify an undocumented youth's eligibility for SIJ status. 8 C.F.R. § 204.11(c). As interpreted by the Court in H.S.P., the five eligibility requirements[1] under the Act and the regulations are:

(1) The juvenile is under the age of 21 and is unmarried;

(2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;

(3) The "juvenile court" has jurisdiction under state law to make judicial

---

[1] Although the regulations had previously contained additional requirements, including that the juvenile "has been deemed eligible by the juvenile court for long-term foster care," 8 C.F.R. § 204.11(c)(4), the 2008 TVPRA amendments removed this requirement. H.S.P., supra, 223 N.J. at 209.

determinations about the custody and care of juveniles;

(4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under State law; and

(5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence within the meaning of 8 U.S.C.A. § 1101(a)(27)(J)(ii); 8 C.F.R. § 204.11(a), (d)(2)(iii)[.]

[H.S.P., supra, 223 N.J. at 210 (quoting In re Dany G., 117 A.3d 650, 655 (Md. Ct. Spec. App. 2015)).]

Our Supreme Court delineated in H.S.P. the Family Part's limited role in this federal-state arrangement. Id. at 210-15. Significantly, state family courts do not "render[] an immigration determination." Id. at 210 (quoting In re Marcelina M.-G. v. Israel S., 973 N.Y.S. 2d 714, 721 (N.Y. App. Div. 2013)). Rather, a state court's order in an SIJ status case serves "merely [as] a prerequisite that must be fulfilled before a juvenile can submit his or her application for SIJ status to [United States Citizenship and Immigration Services ('USCIS')]." Ibid. It is only "[a]fter obtaining SIJ status [that] a child is permitted to apply for adjustment of status under 8 U.S.C.A. § 1255, in an effort to obtain legal permanent residency, and, eventually, U.S. citizenship." Id. at 210-11.

The Court in H.S.P. emphasized that the Family Part's findings under this statutory and regulatory scheme must "only relate to matters of child welfare[.]" Id. at 212. Further, in making such predicate findings, the Family Part must apply the particular child welfare laws of New Jersey, "and not that of a foreign nation." Id. at 212-13.

H.S.P. also instructs that "Family Part courts faced with a request for a SIJ predicate order should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11." Id. at 201 (emphasis added). Additionally, "[w]hen analyzing whether reunification with '1 or both' parents is not viable due to abuse, neglect, or abandonment, the Family Part shall make separate findings as to each parent[.]" Ibid. (emphasis added). Ultimately, the federal government, through USCIS, determines whether a youth qualifies for SIJ status or, eventually, citizenship. Accordingly, the state court's limited designated role is to "make factual findings based on state law about the [criteria of] abuse, neglect, or abandonment, family reunification, and best interests of the child." Id. at 214-15 (quoting Immigration Relief for Abused Children, U.S. Citizenship & Immigration Servs., 2 (2014), https://www.uscis.gov/sites/default/files/USCIS/Green%20Card/Green%20Card%20Through%20a%20Job/Immigration_Relief_for_Abused_Children-FINAL.pdf).

Here, plaintiff filed a verified complaint along with a motion seeking sole legal custody of her son, O.N.R.L. (Omar).[2] Plaintiff also requested the court to make the findings necessary to allow Omar to apply for SIJ status. Defendant G.R. was served in Honduras with the complaint, motion and supporting papers, and signed an affidavit of service acknowledging receipt of those documents. Defendant did not answer or otherwise appear in the action.

The trial court conducted a hearing at which plaintiff and Omar testified. According to their testimony, Omar was born in February 2000, and was sixteen years old at the time of the hearing. Plaintiff and defendant were never married, but lived together in Honduras. After plaintiff became pregnant, defendant began drinking excessively, and physically and verbally abused plaintiff. Because defendant was heavily intoxicated, hospital staff did not allow him to visit Omar when he was born. Defendant did not contribute to plaintiff's medical expenses related to Omar's birth.

Defendant continued to drink excessively after Omar was born. Plaintiff testified defendant sexually assaulted her, resulting in the birth of a second child. Eventually, plaintiff separated

---

[2] For privacy reasons, we use a fictitious name for the minor child and initials for the parties involved in this case.

from defendant when Omar was two years old. Since then, defendant only had contact with Omar on a single occasion, and never contributed to the children's emotional or financial support.

Plaintiff left the children in the care of her mother in Honduras and came to the United States in 2009. She explained her reason was "[s]o I could help my children get ahead in life because I didn't like the money I was making in Honduras and my mother was sick." Omar arrived in New Jersey in August 2015, and has resided with plaintiff and her brother since that time. Plaintiff elaborated that Omar could no longer attend school in Honduras because it was not a "good environment" and "there were many children who were smoking drugs."

In his testimony, Omar indicated he could not recall what his father looked like, and that he only spoke with his father once on the phone. He stated it was plaintiff who provided him with necessities such as food, clothing, and emotional support. Omar confirmed "there was a lot of crime and gangs" where he lived in Honduras and he did not feel safe there. Consequently, he came to the United States to be reunited with his mother, and he presently attends high school here.

After considering this unopposed application, the trial court granted plaintiff sole legal and physical custody of Omar "so that she may continue to care [for] and protect [him]." The court

7                                                          A-0577-16T1

further provided that it "ha[d] exclusive, continuing jurisdiction over any custody determinations concerning [Omar]."

The court also found that plaintiff established eligibility requirements one, . . . as set forth in H.S.P., supra, 223 N.J. at 210. Specifically, the court found Omar was under the age of 21 and unmarried; dependent on the court because it had to determine an appropriate custodian for Omar; the court had subject matter jurisdiction to make a judicial determination about his care and custody; and that it was not in Omar's best interest to be returned to Honduras since he "ha[d] no responsible adult there who can care for him and keep him safe."

However, with respect to the fourth factor, the court declined "to make a finding that [Omar's] father has abandoned him because I don't have personal jurisdiction over [] defendant." The judge elaborated: "[D]efendant, while he was served, is not an American citizen. He's never set foot in the United States. He has no [] contact with the United States, and I would have no jurisdiction over him, particularly with respect to severing his custody." In denying plaintiff's motion for reconsideration, the court reiterated that it lacked personal jurisdiction over defendant because he had never been in the United States and he lacked the requisite minimum contacts with New Jersey.

A-0577-16T1

We conclude the trial court incorrectly ruled it could not make a finding whether reunification with defendant was viable due to abandonment or neglect because it lacked personal jurisdiction over defendant. The court failed to consider the applicability of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), N.J.S.A. 2A:34-53 to -95, which is the exclusive jurisdictional basis for child custody determinations and establishes procedures for determining which court is the appropriate forum when a child has ties to both New Jersey and another state or country. Importantly, the UCCJEA specifically provides that the "[p]hysical presence of, or personal jurisdiction over, a party or child is neither necessary nor sufficient to make a child custody determination." N.J.S.A. 2A:34-65(c).

This jurisdictional principle is well settled. Even prior to the enactment of the UCCJEA, we held that "in personam jurisdiction is not required to entertain an application to modify an order for custody or visitation under the UCCJA [Uniform Child Custody Jurisdiction Act] provided that notice and opportunity to be heard are given as required by N.J.S.A. 2A:34-32 and -33." Genoe v. Genoe, 205 N.J. Super. 6, 15 (App. Div. 1985). The rationale is that "'[t]he custody status of a child or children may be decided quasi in rem.'" Id. at 14 (quoting In re Marriage

9

of Schuham, 76 Ill. App. 3d 339, 346 (1983)). We have "cited Shaffer v. Heitner, 433 U.S. 186, 208, n. 30, 97 S. Ct. 2569, 2582, n. 30, 53 L. Ed. 2d 683, 700, n. 30 (1977), as recognizing adjudications of status, such as matters pertaining to the custody of children residing here, as an exception to the 'minimum contacts' requirement." Div. of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 457 (App. Div.), certif. denied, 177 N.J. 575 (2003). Because plaintiff served defendant, the court had the authority to make the SIJ findings regarding defendant and to award sole custody of the parents' child to plaintiff.

The court was also mistaken in its belief that granting plaintiff custody of Omar obviated the need to make the SIJ findings or was akin to terminating defendant's parental rights to Omar. Consequently, the trial court failed to make any findings about whether defendant abandoned or neglected Omar, and whether Omar's reunification with his father was viable as a result of such abandonment or neglect. Regardless of the court's determination as to custody, it is settled that a court must make findings on each SIJ factor. O.Y.P.C. v. J.C.P., 442 N.J. Super. 635, 642 (App. Div. 2015).

We therefore remand this matter for the expeditious completion of the fact-finding required under the governing law. On remand, the trial court must now determine, under factor four,

if Omar's reunification with his father is not viable due to defendant's neglect or abandonment of Omar. The unchallenged portions of the court's July 28, 2016 order granting plaintiff legal and physical custody of Omar and making findings regarding the remaining elements of the SIJ statute and regulations remain in place.

Reversed in part and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-0577-16T1