293 N.J. Super. 261 (1996)
680 A.2d 765
SAMUEL NED SCHUYLER, PLAINTIFF-APPELLANT,
v.
MARY ASHCRAFT, F/K/A MARY SCHUYLER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1996.
Decided August 13, 1996.
*266 Before Judges DREIER, KESTIN and CUFF.
Ronald M. Abramson argued the cause for appellant (Kleeblatt, Galler & Abramson, attorneys; Mr. Abramson, on the brief).
Harvey R. Meltzer argued the cause for respondent.
James P. Yudes, attorney and guardian ad litem for the minor children W.S. and B.S. (Charles F. Vuotto, Jr., on the brief).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiff, Samuel Ned Schuyler, appeals from portions of a February 6, 1995 order of the Chancery Division, Family Part, determining that New Jersey has enforcement and modification jurisdiction over the custody and child support provisions of an August 28, 1991 Florida order, which modified the parties' May 7, 1990 Florida divorce judgment. The trial court found that New Jersey had "absolute jurisdiction over the [parties'] two minor children"; Florida had lost jurisdiction by the terms of the August 28, 1991 order, and a subsequent order retaining jurisdiction was "null and void as a result of its violation of the constitutional rights of defendant." Plaintiff also appeals from the court's award of counsel fees to defendant and to the children's guardian ad litem, and the reduction of plaintiff's child support arrearages to a judgment.
The Florida order modifying the divorce judgment permitted defendant, Mary Ashcraft (formerly Mary Schuyler), to move with the children outside of Florida, denied plaintiff's request for a change of custody, but granted plaintiff liberal visitation. It continued the prior arrangement that plaintiff was to pay $500 support per month through the Central Depository in Dade County, Florida, and ordered plaintiff to pay traveling expenses for visitation. As will be more definitively explained infra, with the Florida court's consent, defendant moved from Florida to California in 1991, after which she remarried and moved to New Jersey *267 in early 1993. The children have lived in this State for the past three and a half years.
Defendant's New Jersey counsel filed the August 1991 Florida judgment with the Clerk of the Family Part under the provisions of the Uniform Child Custody and Jurisdiction Act (UCCJA) and sought its enforcement and later modification in New Jersey. Plaintiff contested the jurisdiction of the New Jersey court on the basis that Florida continued to be the children's "home state" and the sole state possessing jurisdiction over the custody matter, and he asserted that his repeated attempts to modify the judgment in Florida both prior to and following the New Jersey action deprived New Jersey of jurisdiction. Plaintiff also repeatedly rebuffed the New Jersey court's attempts to enforce the child support provisions of the order, correctly asserting that it had no jurisdiction to do so, as we will later explain.
We hold that the Family Part has jurisdiction over the custody issues, but that the questions of support remain subject to the orders of the Florida courts.

I. Factual and Procedural Summary

We will briefly summarize the facts and procedural history of this case, which are related in more detail in an attached Addendum[1] and at the appropriate points in our analysis. The parties *268 were divorced in Florida in 1990 and they have two children born June 29, 1986 and March 24, 1989. During the year following the divorce, plaintiff and his family repeatedly used the Florida court system to harass defendant and attempt to force a change of custody, filing and refiling false sexual abuse charges and instituting an extraordinary number of legal proceedings. In August 1991, the Florida court granted defendant's emergency petition to leave the state with the children and relocate to California, but permitted plaintiff liberal visitation. The order, quoted at length infra, strongly admonished plaintiff and his family for their behavior and specifically refused plaintiff's request that Florida retain jurisdiction over the matter beyond six months, the period which, under the relevant federal and state statutes, would allow another state to establish custody jurisdiction.
During the six-month period in which Florida retained jurisdiction, plaintiff applied ex parte before different judges and was granted orders changing the wording of the August 28, 1991 order and retaining jurisdiction beyond the six month period. Defendant discovered the existence of these orders months later. There then followed a series of orders purporting to retain jurisdiction and to increase defendant's share of the child support, all of which were issued without proper notice to defendant. Defendant attempted on June 4, 1992 to bring to the Florida court's attention plaintiff's behavior in securing these orders, but was told that the court had "no jurisdiction" to hear her application. In the interim, defendant had remarried a member of the Coast Guard and, following her new husband's transfer, the family moved to New Jersey in January 1993. The last order before the move had issued from Florida on June 2, 1992.
On January 18, 1993, defendant's New Jersey counsel filed the August 28, 1991 order with the Clerk of the Superior Court of New Jersey. Under the mistaken impression that his filing *269 conferred plenary jurisdiction upon New Jersey, defendant's counsel also filed with the Florida court and sent to plaintiff a notice announcing the change of jurisdiction. We note that this was not a motion, nor did it request any relief from the Florida court.
On February 4, 1993, plaintiff filed with the Florida court a "Motion to Enforce Settlement Agreement and/or for Re-Hearing." Defendant received no notice of this motion and apparently no such settlement agreement existed. Plaintiff's attorney had merely mailed proposed agreements to defendant's Florida attorney. A hearing was set for March 30, 1993.
On February 16, 1993, plaintiff filed with the New Jersey court a motion to strike defendant's notice of change of jurisdiction and represented to the New Jersey court that "various motions" regarding the parties' children were "currently pending" in Florida. A hearing was set on the matter for March 19, 1993 in New Jersey before the Family Part. Plaintiff then, on an emergent basis, applied for and received a hearing in Florida on March 11, 1993 to determine jurisdiction. The Florida court then issued an order on March 12, 1993 denying defendant's motion to transfer jurisdiction to New Jersey, although no such motion had ever been made. At the March 19, 1993 hearing in New Jersey, the court denied plaintiff's request to strike the notice of change of jurisdiction, observing that the effect of defendant's notice was merely to advise Florida of defendant's new address and where to send the support checks.
After obtaining the Florida order denying the "motion" to transfer jurisdiction, plaintiff informed defendant by letter that he would be picking up the children on April 8, 1993 for visitation in Florida and that she should bring the children to the airport in Philadelphia. Since plaintiff was not entitled to this visitation and, contrary to court order, had not made the arrangements with defendant, defendant feared that the children would not be returned if she allowed them to leave New Jersey. On April 1, 1993, the New Jersey court issued an emergent order limiting visitation to within New Jersey. On April 13, 1993, the New Jersey court *270 assumed emergency jurisdiction over the children citing their best interests and fear of their disappearance. On April 14, 1993, the Florida court transferred custody to plaintiff.
On June 4 and June 8, 1993, the New Jersey court held hearings on whether the custody and visitation provisions of the August 28, 1991 order should be modified. It was at these hearings that plaintiff's repeated due process violations became clear to all. Plaintiff's Florida counsel testified that he had never noticed defendant of the application for the orders he obtained from the Florida court in February 1992 and that he knew she was unrepresented at that time. He was later admonished by the Florida Bar for his conduct in this case. We note that information concerning the substance of this testimony is entirely absent from plaintiff's brief before this court, in which he relates as "procedural history" and "fact" the existence and content of the February 1992 orders retaining jurisdiction. Although plaintiff's Florida attorney specifically testified at this time only with regard to the February 1992 order, as will be explained infra, it is clear from the record that plaintiff's due process violations were pervasive during this litigation.
Throughout 1993 the Florida court issued various orders regarding custody, and the New Jersey court began hearings on defendant's attempts to enforce the child support provisions of the August 28, 1991 order. Plaintiff refused to supply the New Jersey court with the requested financial information. On March 4, 1994, after a telephonic conference between the New Jersey and Florida judges, Florida again relinquished jurisdiction over the matter, citing the best interests of the children. On March 7, 1994, however, plaintiff's Florida attorney sent an ex parte letter to a Florida judge who had issued prior ex parte orders in the matter, but who was no longer sitting in the family court, stating that "someone"[2] had contacted the administrative judge of the Family *271 Division and "mislead" [sic] him into believing jurisdiction did not belong in Florida. That same day the Florida court rescinded its March 4, 1994 order that had relinquished jurisdiction.
On April 6, 1994, plaintiff telephoned defendant at her office and, overheard by defendant's co-worker, threatened to kill her and her counsel and to take the children. Defendant filed a criminal complaint the same day. After hearing testimony, on April 27, 1994, the Chancery Division in Cape May County issued a final restraining order under the Prevention of Domestic Violence Act prohibiting plaintiff from contacting defendant or the children, suspending visitation, and ordering plaintiff's weapons seized from his home. Upon leaving the courthouse with the order on April 27, 1994, defendant was assaulted two blocks away by a man who warned her to "drop the charges." She immediately reported the incident to the police and applied for emergent relief.
At an emergent hearing the next day, defendant testified that she had been followed in New Jersey in the past, and, one day she had returned home and, after seeing someone going over her back fence, she entered her home with a security guard and discovered the word "dead" written in ketchup on her sliding glass door. Defendant also testified that plaintiff had told her that he knew about car bombs, leaving her afraid each time she turned on her car, and he told her he was going to kill her with a gun she had bought him as a gift. Plaintiff was represented at the hearing by his attorney. On the basis of the testimony, the court terminated all plaintiff's contact with defendant and the children, and permitted defendant to change and unlist her telephone number without providing the information to plaintiff.
On June 30, 1994, the New Jersey court appointed a guardian ad litem for the children. Based on interviews with the children and defendant (plaintiff refused to co-operate), the guardian strongly urges in his brief to this court that it is in the best interest of the children that New Jersey maintain jurisdiction over the children's custody.
*272 On August 11, 1994, the Florida court issued an order staying all matters until resolution of the jurisdictional issue by New Jersey's Appellate Division or Supreme Court. Nonetheless, a different Florida judge issued an order on August 31, 1994 retaining jurisdiction. Various proceedings regarding child support continued in the New Jersey courts through September and October 1994. On November 4, 1994, Florida issued two orders of bodily attachment for the children. On November 10, 1994, plaintiff filed a motion directed to the Presiding Judge of the Essex County Family Part requesting recusal of the judge hearing the case and the reinstatement of visitation. The motion, filed by plaintiff's current counsel, asserted that defendant received notice of each Florida proceeding, neglecting to mention the testimony of plaintiff's Florida counsel to the contrary. The motion was denied.
On February 6, 1995, the New Jersey court ordered that it had "absolute jurisdiction" over the children as a result of the terms of the August 18, 1991 Florida order and the testimony of plaintiff's Florida counsel that he had never properly served defendant with the papers that resulted in the orders issued within the six-month period retaining jurisdiction. The court also issued a bench warrant for plaintiff's arrest for failing to comply with orders to produce financial records. As noted earlier, plaintiff here appeals from the portion of this order relating to jurisdiction and the fees there awarded.
On April 28, 1995, the New Jersey court found that plaintiff was secreting assets and warned him that it would entertain a motion to transfer sole custody to defendant if he did not pay the fees of the court-ordered psychologist.
There then transpired what can only be characterized as the most bizarre incident in this history. On May 5, 1995, an investigator's affidavit filed in Florida represented that plaintiff had sole custody of the children and that defendant was unlawfully keeping them out of that state. The affidavit omitted all mention of the New Jersey proceedings and of the August 11, 1994 Florida order *273 staying the transfer of custody. Plaintiff supplied the court with defendant's photograph for purposes of identification, and on June 28, 1995, Florida's Governor signed extradition papers for defendant. Governor Whitman of New Jersey issued a warrant for defendant's arrest and extradition on July 20, 1995. On July 29, 1995, defendant was placed in handcuffs and arrested in front of her children. She was released on bail and appeared before the New Jersey criminal court at a habeas corpus hearing on July 31, 1995. The Cape May County Prosecutor informed the court that he believed the warrant was based on misinformation. The criminal court judge observed that "this reads like some of the old Family Court litigation that led to the adoption of the Uniform Child Jurisdiction and Custody Act. Because this kind of thing just really hasn't happened since the 40's and the 50's." The New Jersey Governor's Office was expected to withdraw the warrant, but the judge scheduled time for a later hearing if necessary. At a hearing on August 1, 1995 before the New Jersey judge who had been handling the civil portion of the case, plaintiff's New Jersey counsel informed the court that he knew plaintiff had been communicating with the Miami District Attorney's Office, but he believed the matter to be one of attorney-client privilege. The judge stated that, in light of the fraud perpetrated upon the executive branch in New Jersey, the privilege did not apply and he expressed displeasure that counsel had withheld the information.
On December 13, 1995, the criminal court granted defendant's writ of habeas corpus based on stipulations agreed to by the New Jersey prosecutor and defendant's attorney. Plaintiff's attorney was present at the proceedings. The prosecutor had several times invited the State Attorney in Florida to participate in the proceeding, but had received no reply.[3] Defendant's attorney also received no reply to his request for supporting documentation.
*274 On January 5, 1996, while this matter was pending hearing in this court, we remanded the matter to the trial court, in part, to permit additional conversations between the New Jersey and Florida judges. On January 29, 1995, the Florida court ceded jurisdiction to New Jersey once again.
On February 8, 1996, plaintiff moved in Florida for a rehearing of the January 29, 1995 order on the basis that (1) he had not been given an opportunity to be heard; (2) the order was without factual or legal justification and (3) the order was contrary to the provisions of the UCCJA and the federal Parental Kidnapping Prevention Act. Plaintiff's Florida counsel noticed a hearing before the Florida court on the issue for April 1, 1996. Defendant received a bare notice, without ever receiving the memorandum submitted to the Florida court in support of the motion. The Federal Express receipt shows the unsuccessful attempt to serve her just before the hearing, and defendant's counsel has certified to us and represented in open court before us that neither he nor his client received the moving papers, including the memorandum on which the judge's order was based, until well after the hearing. As usual, the Florida court was not apprised by plaintiff of these procedural deficiencies. In effect, this was an ex parte application. On April 2, 1996, the Florida court rescinded its January 29, 1996 order ceding jurisdiction. The rescinding order incorporated, virtually completely, the factual history contained in plaintiff's memorandum. Nearly three weeks later, defendant's attorney received plaintiff's complete application for the April 2, 1996 order.

II. Legal Analysis

The custody and support aspects of this case are governed by different statutes and therefore must be analyzed separately. We *275 first will examine the New Jersey court's authority to enforce and modify the custody provisions of the August 28, 1991 judgment.

A. Custody and Visitation Jurisdiction

It should be noted at the outset that none of the relevant statutes requires that this state meet any jurisdictional prerequisites merely to recognize and enforce a valid out-of-state custody decree. See N.J.S.A. 2A:34-41 ("Recognition of out-of-state custody decrees"), -43(a) ("Filing and enforcement of custody decree of another state"); 28 U.S.C.A. § 1738A ("Full faith and credit given to child custody determinations," known as the Parental Kidnapping Prevention Act (PKPA)). The pertinent issue in such situations is whether the foreign decree is valid under the terms of the statutes. Ibid. If so, it is entitled to be enforced in the same manner as a custody decree issued by a New Jersey court. Ibid. If the decree had been validly modified by the issuing court, then the initial decree is invalid to the extent it has been modified, but the decree as modified is entitled to enforcement by this state. N.J.S.A. 2A:34-41.
Neither party has disputed that the August 28, 1991 order was valid when entered. Plaintiff's counsel agreed at oral argument before us that plaintiff's ex parte attempt in February 1992 to change the wording of the order because of what plaintiff's Florida counsel characterized as "certain inaccuracies" rendered the ensuing Florida order invalid. The questions before this court are therefore whether plaintiff's later attempts to modify the order resulted in valid enforceable orders, thus invalidating provisions of the August 28, 1991 order, and whether New Jersey gained jurisdiction to modify the August 28, 1991 order. We conclude that the custody provisions of the August 28, 1991 order are entitled to enforcement, as it was not validly modified, and that New Jersey alone has jurisdiction to modify that order insofar as it pertains to custody and visitation.
In the August 28, 1991 order, Florida retained jurisdiction for only six months. On the day jurisdiction was to expire, the Florida court issued an order retaining jurisdiction after an ex *276 parte application by the plaintiff. A number of Florida orders issued over the next several years, most, if not all, without proper notice to the defendant, stating by their terms that Florida retained jurisdiction. But, as plaintiff's counsel conceded at oral argument, if the February 28, 1992 order retaining jurisdiction was void, then Florida had ceded jurisdiction by the terms of its August 1991 order.
On at least two occasions after defendant's move to New Jersey, the judges of New Jersey and Florida conferred as required by the UCCJA, N.J.S.A. 2A:34-34c and Fla. Stat. Ann. § 61.1314 (West 1985), and attempted to resolve the jurisdiction issue. On each occasion the Florida judge determined that the best interests of the children mandated that Florida cede jurisdiction to New Jersey and so ordered, but thereafter upon ex parte application by plaintiff,[4] the Florida judges rescinded their orders and again asserted jurisdiction. The Florida and New Jersey judges most recently conferred and recognized that, given the convoluted history of this case, the primary determinant of jurisdiction in this case should be the best interests of the children. The Florida judge clearly and unequivocally stated in his order of January 29, 1996 that the best interests of the children required the custody and support issues to be determined in New Jersey. Similarly, the earlier March 4, 1994 Florida order relinquishing jurisdiction acknowledged that the New Jersey court "is in a better position to determine the status of the children due to access to teachers, doctors, neighbors and other persons with more up-to-date knowledge of the children...."
The order of April 2, 1996 rescinding the courts' agreement did not even treat the issue of the children's best interests. Interestingly, we note that in this order the court adopted the procedural history advanced by plaintiff in the belatedly served memorandum, *277 whole sections of which were expressly disavowed by plaintiff's counsel before us at oral argument as having been in blatant disregard of federal and state statutory requirements and defendant's due process rights, a recurrent theme throughout this litigation.
There is no question that the originally amended Florida decree of August 28, 1991 was the last clearly valid custody order. Under the PKPA, this order, in conjunction with plaintiff's continued residence in Florida, constituted a potential basis for continued jurisdiction in Florida. 28 U.S.C.A. § 1738A(d). But the existence of this valid Florida order does not carry with it continued Florida jurisdiction over custody matters when such jurisdiction has been expressly relinquished or lost. 28 U.S.C.A. § 1738A(f)(2); E.E.B. v. D.A., 89 N.J. 595, 611, 446 A.2d 871 (1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445 (1983). Under the UCCJA, the best interests of the children now determine which state will govern these proceedings. N.J.S.A. 2A:34-31. Having said this, and recognizing the long and bitter history of these parties, we will explain our legal conclusions in detail.

1. Full Faith and Credit Under the UCCJA and the PKPA

Interstate jurisdictional issues regarding child custody are governed by the Parental Kidnapping Prevention Act, 28 U.S.C.A. § 1738A (PKPA). The provisions of the PKPA work in tandem with each state's version of the Uniform Child Custody and Jurisdiction Act (UCCJA). Thompson v. Thompson, 484 U.S. 174, 181, 108 S.Ct. 513, 517, 98 L.Ed.2d 512, 521 (1988). As a federal statute, the PKPA preempts the UCCJA's jurisdictional comity provisions at any point where the acts conflict. Matter of Adoption of Child by T.W.C., 270 N.J. Super. 225, 233, 636 A.2d 1083 (App.Div. 1994).
As indicated by its heading, "Full faith and credit given to child custody determinations," the PKPA guides this court in determining when it must give full faith and credit to, and therefore *278 enforce, a particular custody decree of another state. The statute's initial paragraph requires that:
The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided ... any child custody determination made consistently with the provisions of this section by a court of another State.
[28 U.S.C.A. § 1738A(a).]
The statute then explains:
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if 
(1) such court has jurisdiction under the law of such State;
and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
[28 U.S.C.A. § 1738A(c)(2).]
Moreover, the statute provides for a state's presumptive continuing jurisdiction as long as the requirements of (c)(1) continue to be met, and either the child or one contestant remains a resident of the state. 28 U.S.C.A. § 1738A(d). Florida clearly was the *279 children's home state[5] when the original divorce complaint was filed and plaintiff has continued to be a Florida resident. Therefore under the PKPA, Florida would satisfy subsection (A).
But, as noted above, the PKPA contemplates that a court may decline or lose its right to exercise its continuing jurisdiction and, in that instance, another state may modify an order if that state has jurisdiction. 28 U.S.C.A. § 1738A(f)(2). The August 28, 1991 Florida order states that "Jurisdiction is reserved over the parties and the subject matter for six (6) months from the entry of this order." The court's strong language during the hearing and in its order indicates its intention to minimize plaintiff's and his family's ability to use the Florida court to further disrupt the lives of defendant and the children. The Florida docket shows eighty-three entries from the May 1990 date of the divorce until the court granted defendant's petition to leave the state in August 1991. The Florida judge observed:
The wife has presented as best she can a plan to move to California. Now, unfortunately a most convenient time [sic]. She has no lodging, no money and constant oppression. If the mother wants to try for a better life with the two children, the court gives her its blessings. Slavery was abolished 125 years ago and so was oppression. The mother's condition following her divorce has been analogous to that of a slave chained to false accusations, constant allegations and hatred. A human being deserves better.
The court's August 28, 1991 order stated:
FINDINGS:
1. That a change in location of the Mother and children is necessary for the best interest of the children, for the best interest of their parents, and for the best interest of this court system.
2. That the oldest child, [W.], age 5, was evaluated by Dr. Simon Miranda, a psychologist. [W.] came across as an efficient and friendly child who seemed highly stressed and conflicted, relative to the emotionally charged inter-family issues that have developed around him. It appeared to Dr. Miranda that [W.] feels confused and caught in the middle of a very hostile inter-parental/grandparental struggle, wherein there is open warfare between both the Mother and the Father *280 generated by the Father's family, particularly the paternal-grandmother, against the Mother, which is vindictive, smothering, and oppressive.
3. Based on the two-volume history of this case and upon the evidence before the Court, the Court finds that the paternal grandmother is well versed in psychological and litigious behavior, and that the Mother's life following her divorce has been filled with false and improper accusations. Such tactics cannot be used to obtain a change of custody to the Father, and cannot be used to defeat a relocation of the Mother to obtain a better life for her children and her.
4. That the Mother is more credible than the husband with respect to the issues before the Court, and that the equities are with her.
....
9. That the Father should be entitled to liberal visitation, including summers and holidays, and have complete access by telephone with his children.
Based on the above findings, it is hereby ORDERED AND ADJUDGED as follows:
....
B. There is to be no harassment of the Mother upon leaving Florida. She is to keep the security guard present when the Father has his final good-byes with the children. One false move by either side, including the Father's family, will be dealt with accordingly.
....
D. Both parties are to provide each other with current residence addresses and phone numbers, both at work and at home. The Mother shall provide such information to the Father within five (5) days of her arrival in California. Any change of address or phone number must be immediately provided to the other party. All notices required under this Order shall be provided by certified mail, return receipt requested, and shall be mailed to the most convenient address for immediate delivery.
....
H. The Father shall not take and shall not permit any other person to take either of the children to a psychologist, psychiatrist, or similar service while the children are visiting with him. If, after the initial period of adjustment, he wants the to [sic] pay for the children to go to a psychologist, he may do so in California.
....
L. The Father shall make every effort to ensure that his family does not in any manner harass, annoy or threaten the Mother, and they shall not telephone her residence or place of employment unless it is a true emergency concerning the children.
M. Any transfer of the children between the parties shall be in a public place, most specifically at the security office of the Los Angeles Airport, or the security office of the specific airline used by the Father for his travels to California. There shall be no contact between the parties without a security officer present unless a civility develops between them.

*281 ....
R. All other matters now pending before this Court or before the General Master are canceled. The Father's supplemental petition for change of custody denied.
S. The Mother and children may leave Florida on August 30, 1991.
T. Jurisdiction is reserved over the parties and the subject matter for six (6) months from the entry of this order.
The transcript of the proceeding shows that, despite plaintiff's repeated requests, the court specifically refused to retain jurisdiction beyond the six month period. We find that, under these circumstances, the August 28, 1991 Florida order by its terms relinquished jurisdiction after the expiration of the six month period and that it did so in consideration of the best interests of the children.
As noted earlier, the two subsequent orders entered within the six month period and purporting to retain jurisdiction do not meet the requirements of the PKPA and are not entitled to full faith and credit. To be entitled to full faith and credit, a child custody determination[6] must comply with due process as well as jurisdictional requirements:
Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants....
[28 U.S.C.A. § 1738A(e).]
The PKPA's reasonable notice provision is consistent with a similar provision in New Jersey's UCCJA. N.J.S.A. 2A:34-32.
No New Jersey court has fully explored the issue of lack of notice under either the PKPA or the UCCJA. Only one published case has even raised the issue. In D.B. v. R.B., 279 N.J. Super. 405, 413, 652 A.2d 1254 (App.Div. 1995), the plaintiff asserted that a Virginia Court had acted inconsistently with the UCCJA and had not obtained personal jurisdiction over her because she had never been properly served and the summons contained an incorrect address. The court found that she had received actual notice and had appeared throughout the Virginia proceedings fully represented *282 by counsel, thus establishing personal jurisdiction. Ibid; cf. Bednarsh v. Bednarsh, 282 N.J. Super. 482, 491-92, 660 A.2d 575 (Ch.Div. 1995) (considering a similar reasonable notice provision in the federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C.A. 1738B(c)(2)).
The issue of lack of notice has arisen before this court most often in the context of international custody disputes, requiring application of a different and more explicit comity provision in the UCCJA. N.J.S.A. 2A:34-51. See, e.g., Ali v. Ali, 279 N.J. Super. 154, 163-67, 652 A.2d 253 (App.Div. 1994); Schmidt v. Schmidt, 227 N.J. Super. 528, 533, 548 A.2d 195 (App.Div. 1988); Mc. v. Mc., 215 N.J. Super. 132, 139, 521 A.2d 381 (Ch. Div. 1986); cf. Fantony v. Fantony, 21 N.J. 525, 535, 122 A.2d 593 (1956) (applying common law notice jurisprudence in refusing to grant comity to a Cuban custody decree which had not been personally served upon the defendant and which had not sufficiently apprised her that custody would be an issue in the proceeding).
Other states which have specifically interpreted the PKPA's reasonable notice provision generally have concluded that decrees issued without proper notice are not entitled to full faith and credit under that statute. Ex Parte Raywood, 549 So.2d 103, 104 (Ala. Civ. App. 1989); Snow v. Snow, 369 N.W.2d 581, 583 (Minn. Ct. App. 1985); Wells v. Van Coutren, 200 A.D.2d 577, 606 N.Y.S.2d 295, 296 (App.Div. 1994); State v. Carver,[7] 113 Wash.2d 591, 781 P.2d 1308, 1317-18 (1989), amended on other grounds, 113 Wash.2d 591, 789 P.2d 306 (1990); cf. Ingram v. Ingram, 463 So.2d 932, 936-38 (La. Ct. App. 1985) (holding that inability to serve party who had actual notice of the proceedings, but who had fled with the child and moved surreptitiously from state to state did not render resulting Texas custody decree invalid and unenforceable in Louisiana).
*283 The courts which have considered the issue have also made it clear that in particularly egregious situations "a court's continuing jurisdiction is dependent upon judicial proceedings being consistent with the UCCJA and PKPA. When the [issuing] court entered an order without proper notice, it lost jurisdiction." Greenlaw v. Smith, 123 Wash.2d 593, 869 P.2d 1024, 1033 (1994) (approving of the decisions concerning reasonable notice in State v. Carver, supra, and In re Thorensen, 46 Wash. App. 493, 730 P.2d 1380 (Wash. Ct. App. 1987)); accord Snow v. Snow, supra, 369 N.W.2d at 583 (South Dakota court no longer had jurisdiction over initial decree because it was not proceeding in accordance with applicable state and federal law when it entered ex parte decree transferring custody). The Washington and Minnesota courts relied on 28 U.S.C.A. 1738A(d) which states that "[t]he jurisdiction of a court of a State which had made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) continues to be met and such State remains the residence of the child or of any contestant." State v. Carver, supra, 781 P.2d at 1317-1318; In re Thorensen, supra, 730 P.2d at 1385; Snow v. Snow, supra, 369 N.W.2d at 583. Thus even if the Florida court had not declined to retain jurisdiction beyond the six months set forth in its August 1991 order, Florida's subsequent reassertions of jurisdiction without proper notice to defendant were ineffective.
In the case before this court, the two Florida orders purporting to extend jurisdiction and entered prior to the expiration of the six month retention of jurisdiction were issued without proper notice to defendant. Plaintiff's counsel has specifically agreed before us that the order signed February 6, 1992 is void. It was issued upon ex parte application by plaintiff's Florida counsel who later testified before the New Jersey court that he had never even attempted to give notice to defendant or to serve her with a copy of the amended order, and that he knew she was unrepresented at the time. Defendant first discovered the existence of the February 6, 1992 order almost two months after it was signed. The *284 issuance of the order clearly did not comply with the reasonable notice provision of either the PKPA or the UCCJA. Consequently, it is not entitled to the full faith and credit of this court.
Similarly, the order signed on February 28, 1992 is not entitled to full faith and credit because of the lack of proper notice. Plaintiff's Florida counsel testified in New Jersey that the petition forming the basis for this order was not personally served on defendant until March 17, 1992, almost one month after the order was signed. While the PKPA does not define "reasonable notice and opportunity to be heard," both New Jersey's and Florida's UCCJA require that notice be given at least 20 days before a hearing. N.J.S.A. 2A:34-33(b); Fla. Stat. Ann. § 61.1312(2). (New Jersey's statute has an exception for emergent situations, N.J.S.A. 2A:34-34(b); Florida's does not.) Plaintiff made no attempt prior to the hearing to serve notice upon defendant at her father's address in California as earlier directed by the Florida court.[8] Instead, according to the certificate of service, he had mailed the notice to a dentist's office where he believed that defendant worked. Although defendant admits that she, by chance, became aware of the hearing on the day it was held, such notice as defendant received cannot be deemed "reasonable" under any interpretation of the statutes. Plaintiff deliberately circumvented the court's prior order regarding service upon defendant. Defendant had none of plaintiff's moving papers and no counsel, and thus she had no basis to assess her rights or to assert her position. The resulting February 28, 1992 order purporting to retain jurisdiction did not comply with the notice requirements of the PKPA as it was obtained in violation of defendant's due *285 process rights.[9] As such, the order is not entitled to full faith and credit.
Since neither this order nor the February 4, 1992 order is entitled to our full faith and credit, we conclude that the August 28, 1991 order was the only valid custody order in effect at the expiration of the six-month period. By its terms, that order relinquished jurisdiction as of six months from the date of its entry, and at that point any state which had a basis to assert jurisdiction under the UCCJA and PKPA could have done so.
After February 28, 1992, the Florida court continued to issue orders "retaining" or "extending" jurisdiction over the matter. The orders, issued outside of the six-month period established by the August 1991 order, asserted no new basis for jurisdiction and, as with the previous orders, were issued without defendant having received reasonable notice and opportunity to be heard. The first of these orders issued on June 2, 1992 as a result of a March 30, 1992 hearing before a general master and purportedly affected plaintiff's support obligation. On March 26, 1992, via regular mail defendant had received a simple notice, with no supporting papers, of a March 30, 1992 hearing regarding a change of custody. The general master denied defendant's telephone request for an adjournment so she might retain local counsel. Under the threat of losing custody of her children, she therefore participated in the hearing via telephone, unrepresented by an attorney, and again unaware of the content of plaintiff's submission to the court. We cannot view defendant's forced participation in this proceeding as constituting an appearance conferring jurisdiction anew on Florida. A bare notice, received *286 four days before a hearing in another state, along with the court's denial of an adjournment to retain local counsel cannot in our view meet the PKPA's or UCCJA's standards requiring reasonable notice and opportunity to be heard for a person threatened with the loss of her children.[10] Furthermore, as we noted, the order asserted no new basis of jurisdiction, and, at this point, Florida had no jurisdiction by reason of its cession of jurisdiction in its August 28, 1991 order.
Subsequently, defendant attempted through local counsel to bring to the general master's attention via an emergency petition for rehearing plaintiff's actions in obtaining the 1992 orders. This was essentially a challenge to the prior orders, not a new submission of the matter to the Florida court. Although a hearing was held on June 4, 1992, the master refused to consider the merits of defendant's petition because he said he lacked jurisdiction to do so. No order issued as a result of this hearing. We see no reason to disagree with the Florida court's conclusion that it had no jurisdiction over the matter merely on the basis of defendant's petition.[11]
*287 According to both parties' Florida attorneys, no further hearings were held in Florida during 1992.

2. Modification Jurisdiction Under the PKPA and the UCCJA

We now reach the question of whether New Jersey gained the right to modify the August 28, 1991 order as it pertains to custody. As we noted earlier, the defendant had remarried in January 1992. Her new husband was a member of the Coast Guard and the family moved with him when he was transferred to New Jersey in January 1993. On January 28, 1993, defendant filed the August 28, 1991 order with the clerk of the Superior Court and the clerk assigned a docket number. See N.J.S.A. 2A:34-43. The same day, defendant's counsel filed with the Florida court a "Notice, Pursuant to UCCJA, For Change of Jurisdiction From Florida to New Jersey." Defendant's counsel was apparently under the mistaken assumption that either this notice or the filing of the judgment in New Jersey conferred absolute jurisdiction on New Jersey under the UCCJA. But, the filing of the judgment in New Jersey, without more, merely permitted this state to enforce the foreign custody order. Compare N.J.S.A. 2A:34-43 (enforcement of foreign decree) with N.J.S.A. 2A:34-42 (modification of foreign decree); see Brigitte M. Bodenheimer, Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA, 14 Fam. L.Q. 203, 220-21 (1981).
Under the PKPA's modification provisions:
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if
(1) it has jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
[28 U.S.C.A. § 1738A(f).]
Subsection (2) is satisfied in that Florida declined to exercise continuing jurisdiction by the terms of the August 28, 1991 order. *288 Thus, the second requirement for New Jersey's exercise of modification jurisdiction is satisfied.
To determine whether New Jersey has jurisdiction to make a custody order thus satisfying the first requirement, we look to the jurisdictional prerequisites of our own UCCJA. Neger v. Neger, 93 N.J. 15, 31, 459 A.2d 628 (1983). New Jersey clearly has jurisdiction under N.J.S.A. 2A:34-31a(2). N.J.S.A. 2A:34-31(a)(2) sets out one of four possible, independent bases for jurisdiction:
a. The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:
....
(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or....
The children have a significant connection with this state. It is the residence of their mother, with whom they have lived for their entire seven and ten-year-old lives. The children themselves have resided here for three and a half years. It is the home of their stepfather who, along with their mother, has provided their financial support during these years that their father has refused to pay child support. This is not a case where the children were removed from Florida surreptitiously or brought to New Jersey for the purpose of concealment. They left Florida with the blessing of the Florida court and came to reside in New Jersey as a result of their stepfather's career.[12] Although the litigation in this State may have dragged on longer than it should have, the resulting New Jersey orders did not unfairly permit or prolong the children's residence in this State. There was no reason for *289 the trial court or this court to disregard the fact, twice recognized by the Florida court, that all of the evidence concerning the children's schooling, babysitters, friends and daily lives for the past several years is located in New Jersey, thus more than meeting the "substantial evidence" standard of the statute. Thus, we conclude that New Jersey has jurisdiction to modify the August 28, 1991 order.
Plaintiff argues, however, that whether or not New Jersey had jurisdiction, it was restricted from exercising that jurisdiction by 28 U.S.C.A. 1738A(g) which provides that:
A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.
We have already determined that Florida no longer had jurisdiction over the matter at the time the parties appeared in New Jersey. Since any proceedings in Florida at that time therefore were necessarily inconsistent with the provisions of the UCCJA, it is unnecessary for us to evaluate whether a particular allegedly pending proceeding involved an exercise of jurisdiction consistent with the terms of the PKPA. We note, however, that each of the particular actions on which plaintiff attempts to rely were conducted without proper notice in disregard of defendant's statutory due process rights.[13] Such ex parte proceedings to modify the earlier *290 decree did not constitute pending actions which would have precluded the New Jersey court from exercising its jurisdiction on the custody issues. Snow v. Snow, supra, 369 N.W.2d at 583. Cf. Wachter v. Wachter, 439 So.2d 1260, 1263-65 (La. Ct. App. 1983) and Elder v. Park, 104 N.M. 163, 717 P.2d 1132, 1137 (Ct.App. 1986) (applying first-in-time rule where initial custody decree was issued without notice).
Finally, we note plaintiff's argument that he was entitled to disregard the orders of the New Jersey court because it had no jurisdiction over him personally. There is clear personal jurisdiction over plaintiff by reason of his appearance in New Jersey. R. 4:4-6. In any event, personal jurisdiction is not required when a court is exercising jurisdiction solely over custody matters, provided that the party is given reasonable notice and opportunity to be heard. Genoe v. Genoe, 205 N.J. Super. 6, 15, 500 A.2d 3 (App.Div. 1985). Plaintiff's jurisdictional arguments as they pertain to the custody issue are therefore without merit.

B. Child Support Jurisdiction

We now turn to the child support provisions of the August 28, 1991 order. Merely registering the out-of-state order with the Clerk of the Superior court in accordance with the UCCJA does not enable a New Jersey court to enforce or modify the support provisions.
We will first discuss New Jersey's ability to modify the support provisions of the August 28, 1991 Florida order. On October 20, 1994, Congress enacted the Full Faith and Credit for Child Support Orders Act (FFCCSOA), Pub.L. No. 103-383, 108 Stat. 4064 (codified as 28 U.S.C.A. § 1738B). Obviously, the Act's *291 guidance was unavailable to the trial court when it was first confronted with this case in 1993. Under the continuing jurisdiction section of the FFCCSOA, the Florida court retained exclusive jurisdiction to modify this support order because plaintiff, as a contestant, remained a resident of that State and no other state gained the authority to modify the order. 28 U.S.C.A. § 1738B(d). Modification authority under the statute is limited to circumstances where
(1) the court has jurisdiction to make such a child support order; and
(2)(A) the court of the other State no longer has continuing exclusive jurisdiction of the child support order because that State no longer is the child's State or the residence of any contestant; or
(B) each contestant has filed written consent to that court's making the modification and assuming continuing, exclusive jurisdiction over the order.
[28 U.S.C.A. § 1738B(e).]
Since the parties' apparently have not filed written consent allowing our courts or those of any other state to modify the order and since plaintiff remains a Florida resident, under the FFCCSOA, apparently neither this State nor any other gained authority to modify the support provisions of the August 28, 1991 order. Florida therefore retained continuing exclusive jurisdiction over the support provisions of this order, and New Jersey is without authority to modify them.
If defendant wishes to enforce these provisions, she must avail herself of the enforcement methods established by the Revised Uniform Reciprocal Enforcement Act, (RURESA), N.J.S.A. 2A:4-30.24 to 30.64, which we will explain further. In Kulko v. California Superior Court, 436 U.S. 84, 100-101, 98 S.Ct. 1690, 1701, 56 L.Ed.2d 132, 146 (1978), the Supreme Court held that the mere presence in a state of the support obligee and the children was insufficient to confer personal jurisdiction over an obligor who was domiciled in another state. See also Genoe v. Genoe, 205 N.J. Super. 6, 500 A.2d 3 (App.Div. 1985) (distinguishing jurisdiction necessary to enforce an out-of-state custody versus support order). The Court found that a proper mechanism for facilitating the collection of child support in such circumstances already existed in *292 the URESA statutes adopted by both parties' states. Kulko v. California Superior Court, 436 U.S at 98-99, 98 S.Ct. at 1700-1701, 56 L.Ed.2d at 145-46. These statutes allow an obligee-parent claiming support from an out-of-state parent to file the petition in his or her own state, yet have it adjudicated on the merits in the obligor's state of residence without either party leaving their own state. Id. at 99, 98 S.Ct. at 1700, 56 L.Ed.2d at 145. The Court offered a very clear explanation of how the statutes function:
Under the [Uniform] Act, an "obligee" may file a petition in a court of his or her State (the "initiating court") to obtain support. If the court "finds that the [petition] sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property," it may send a copy of the petition to the "responding state." This has the effect of requesting the responding State "to obtain jurisdiction over the obligor." If jurisdiction is obtained, then a hearing is set in a court in the responding State at which the obligor may, if he chooses, contest the claim. The claim may be litigated in that court, with deposition testimony submitted through the initiating court by the initiating spouse or other party. If the responding state court finds that the obligor owes a duty of support pursuant to the laws of the State where he or she was present during the time when support was sought, judgment for the petitioner is entered. If the money is collected from the spouse in the responding State, it is then sent to the court in the initiating State for distribution to the initiating party.
[Id. at 99 n. 13, 98 S.Ct. at 1700 n. 13, 56 L.Ed.2d at 146 n. 13. (citations omitted).]
To enforce her claim, defendant therefore must file a complaint under the RURESA provisions set out in N.J.S.A. 2A:4-30.35. The New Jersey court, as the initiating state, N.J.S.A. 2A:4-30.26c, will then assess the complaint and, if appropriate, certify the complaint and send it to the Florida court, N.J.S.A. 2A:4-30.38. None of defendant's actions thus far precluded her from following these procedures if she wished to enforce the support provisions of the August 1991 order. Defendant's attempt to enforce the support order should be treated as an application under RURESA, and should now be so processed. Her complaint, when filed, shall be deemed to date back to her initial application for enforcement of the Florida support order. When the matter is considered *293 in Florida, we trust that the circumstances described earlier giving rise to the amended support orders will be considered.
Accordingly, we hold that plaintiff has correctly asserted that New Jersey is without subject matter jurisdiction for purposes of enforcing the child support provisions of the August 1991 order.

III. Conclusion

Since we are now the sole state with jurisdiction over custody and visitation issues, the order of the Family Part of the Chancery Division of the Superior Court of New Jersey is affirmed as it affects custody and visitation. The order of the Family Part is reversed and vacated insofar as it asserts jurisdiction over the support provisions of the August 28, 1991 order and to the extent that it provides modification or enforcement relief in the area of support. We remand for processing defendant's RURESA complaint for support, which should be considered retroactive to her initial application to the Family Part. Finally, in light of our ruling concerning support jurisdiction, we remand for the trial court's reconsideration of the amount of counsel fees awarded.
KESTIN, J.A.D., concurring.
Because of Judge Dreier's prodigious effort in developing a detailed analysis of the sordid procedural history of this case, I am now persuaded that an adequate basis existed upon which a New Jersey trial court could validly assert subject matter jurisdiction over the custody and visitation issues. This is not to minimize defendant's primary responsibility to proceed by way of appeal in Florida to challenge any order of a Florida court by which she felt aggrieved. There was, however, an independent factual basis for the exercise of subject matter jurisdiction by our trial court, as Judge Dreier has so capably demonstrated.
Between the time the Florida trial court expressly established the terms governing its relinquishment of jurisdiction (the expiration of six months after the entry of its August 28, 1991 order) and the date of New Jersey's exercise of subject matter jurisdiction, no putative modification of the Florida order can be seen as *294 having emanated from a proceeding that satisfied basic due process requirements. Thus, there was no impediment to the assertion of jurisdiction by a New Jersey court, whether motivated by its general parens patriae concerns with the best interests of children resident here for some time, or by a more particularized, straightforward application of the standards contained in the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-31.
It must be stressed that, in reaching this conclusion, we are not reviewing the correctness of any determination made in a Florida trial court. That is a responsibility belonging exclusively and completely to the appellate courts of Florida. It is a function which we do not share and which we may not usurp. As I see it, we are merely applying a standard rule that no court is obliged by the full faith and credit clause of U.S. Const., art. IV, § 1, nor by any other rule of comity, to recognize or give effect to a judgment or order of another state that is clearly unsupported by adherence to fundamental due process standards such as notice and a fair opportunity to be heard. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 497 (1980) ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere. Pennoyer v. Neff, 95 U.S. 714, 732-733, 24 L.Ed. 565 (1878). Due process requires that the defendant be given adequate notice of the suit, Mullane v. Central Hanover & Trust Co., 339 U.S. 306, 313-314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)[.]"). Such a conclusion follows from a customary and regular exercise of our judicial responsibilities in a matter before us, and is in no way intended to evince anything but the highest respect for the authority and proceedings of the courts in a sister state.
In the latter connection, I believe it is essential, while affirming our trial court's exercise of subject matter jurisdiction, that we emphatically disavow the general tone and some of the terms of its April 13, 1993 order to show cause, from which the Florida trial court has taken justifiable offense. The reference to a decision of a Florida trial judge as having been "improvidently taken" and the *295 provision that "enjoined" the Florida court from issuing any further orders affecting the issues in dispute were particularly ill advised. The trial court had no right to make the finding and no authority to order the injunctive relief. It not only acted ultra vires in doing so, but it also failed to accord a decent and essential respect to the courts of a sister state. Furthermore, the trial court omitted to address adequately the only valid basis for declining to afford full faith and credit, the due process issue.
No judge of this state should ever treat the proceedings or authority of courts and judges in other states with such disdain. None of us is privileged to evaluate the quality or correctness of sister state determinations, as we might well do in respect of decisions by coordinate or subordinate courts in our own state. Nor do we have any warrant whatsoever to enjoin the courts of a sister state from acting according to their best lights. The full faith and credit clause substantially limits our freedom of action in these respects; and our own sense of comity should confine the manner in which we deal with the judicial proceedings of sister states. Absent an independent, temperately expressed determination that due process was lacking, reached with the greatest reluctance, we are commanded to defer to the rulings of courts in other states, and institutionally compelled to exhibit every bit of the grace we expect to be reciprocated.
Judge CUFF joins in this concurrence.
NOTES
[1] Given the conclusion of the Florida court in its April 2, 1996 order purporting to retain custody jurisdiction, we have prepared and attached a detailed analysis of the salient events giving rise to each order described by the Florida court. The factual history in that order, however, adopted from plaintiff's memorandum, incorporated numerous inaccuracies and misrepresentations suggesting the extent to which plaintiff has misled the Florida court. We have not included the Addendum in the published opinion, as it is intended primarily for use by the parties and courts involved in this case.

We are not, of course, reviewing the Florida order. Such a function belongs to a Florida appellate court. The concurring opinion expands upon this principle and there is no disagreement among the members of this Part concerning the concurrence. We differentiate between an appellate review, which is the right of the Florida courts, and an analysis of the Florida orders under the PKPA and UCCJA to determine how they might affect New Jersey's right to assert jurisdiction.
[2] The "someone" was a judge of the New Jersey Superior Court acting as directed by N.J.S.A. 2A:34-35d.
[3] On December 27, 1995, plaintiff's current counsel in a letter to the Florida State Attorney, criticized the stipulations and relayed his "astonish[ment]" that "these questions" were not brought to the attention of the State Attorney or plaintiff's counsel. However, as the New Jersey prosecutor had advised the court during the hearing, he had discussed the issues with the Florida State Attorney. Additionally, while plaintiff was technically not a party to the writ which was a criminal proceeding, his attorney had directly observed the proceedings.
[4] Notice of the latest application was sent to defendant, but she was given none of the other moving papers until weeks after the order was entered. We assume that the Florida judge had been incorrectly told that defendant had been timely served with all of the moving papers.
[5] A "home state" is one where the child has lived with his or her parent's for at least six months "immediately preceding the time involved." 28 U.S.C.A. § 1738A(b)(4).
[6] A "child custody determination" includes both initial and modification orders. 28 U.S.C.A. § 1738A(b)(3).
[7] State v. Carver, supra, involved a criminal prosecution for custodial interference, but its resolution required the court to assess the PKPA. 781 P.2d at 1311, 1313-19.
[8] On December 19, 1991, the Florida judge who had issued the August 28, 1991 order granted a motion to withdraw submitted by defendant's attorney. Plaintiff's attorney was copied on the order which stated that "all further pleadings shall be served on the Former Wife, MARY PAYNE, now known as MARY ASHCRAFT, and sent to her c/o Richard Payne, [California address and telephone number], until such time as she retains new counsel and an appearance is filed on her behalf."
[9] Furthermore, the order states that the court was advised that the parties had waived their right to object to the hearing officer's report, which the court adopted the same day it was issued. Although in this analysis we do not purport to review Florida's compliance with its own laws, it is difficult to understand how the defendant could have waived her right to object to a proceeding in which all parties agree that she did not participate and of which she lacked proper notice.
[10] Moreover, it is clear that the hearing itself did not afford the kind of full and fair hearing which may have overcome the notice deficiencies. Although defendant had informed the court that she had received only a bare notice of the hearing, with no supporting papers or financial documents from plaintiff and no notice of referral which would have informed her of her obligation to supply certain documents, she was admonished and financially penalized for not providing the documents. Also, it was during this hearing that defendant and the court became aware that plaintiff had had the August 28, 1991 order changed without notifying defendant. The court apparently ignored this information.
[11] We note that the master decided he did have jurisdiction to hear old matters regarding sanctions and contempt against defendant arising out of custody issues, although defendant had no notice that these matters would be considered at the hearing, and in fact, had never received proper notice of these petitions. Once again, under these circumstances, it is impossible for us to conclude that defendant had received reasonable notice or opportunity to be heard. However, no court order issued as a result of this hearing, and therefore, under the PKPA, there is no need for us to review the propriety of the general master's actions in this regard.
[12] The Florida court permitted a move to California. The move to New Jersey actually brought the children geographically closer to plaintiff. We perceive no reason why the Florida court would have permitted the California move, which allowed defendant to move closer to her family there, but would have denied a request by defendant to accompany her new husband upon his transfer to New Jersey.
[13] On February 16, 1993, plaintiff asserted before the New Jersey court that there were "various motions currently pending" in Florida regarding the parties' minor children. However, one of these "motions" was apparently non-existent, and defendant had never been notified of the other. On February 4, 1993, plaintiff filed in Florida a "Motion to Enforce Settlement Agreement and/or for Re-Hearing." The notice was certified as having been mailed to defendant's Florida attorney. She, however, stated that she never received such papers. Given the history of non-service of the earlier motion papers, admitted by plaintiff's attorney, we give credence to this assertion. Defendant's New Jersey counsel also certified that he did not receive such a motion, but he did receive a March 1, 1993 notice of hearing for March 30, 1993, which referenced this motion. The notice also stated that the hearing would consider defendant's motion to transfer jurisdiction. However, as explained earlier, defendant had never filed such a motion. On March 8, 1993, defendant's counsel received a notice of hearing on a "Motion to Determine Jurisdiction." Defendant had no knowledge of any such motion and, aside from this notice, there is no evidence in the record that any such motion ever existed. Nonetheless, on March 12, 1993, the Florida court issued an order denying "Respondent's [defendant's] Motion to Transfer Jurisdiction to New Jersey." The order does not refer to plaintiff's motion concerning the purported settlement agreement.